In Re: Manchester Square Partners, L.P., No. 471-11-10 Bncv (Hayes, J., Jan. 19, 2012)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Bennington Unit | Consolidated Docket No. 471-11-10 Bncv |

| | |
|---|---|
| In Re:<br>Manchester Square Partners, L.P.<br>F.H. Corporation<br>F.H. Corporation<br>H.N. Realty Partners, L.P.<br>H.B. Realty Partners, L.P.<br>H.B. Realty Partners, L.P.<br>HLJ, L.P.<br>Manchester Commons Associates, L.P.<br>Vanderbilt Properties, L.P.<br>Vanderbilt Properties, L.P.<br>Mancom, Inc.<br>Vanderbilt MPD Corporation | |

### DECISION ON MOTION

This case comes before the court on a consolidated appeal of the decisions of the Manchester Board of Civil Authority with respect to various properties in the town of Manchester, Vermont.  Each entity filed a separate appeal, but for the purposes of this consolidated appeal, the court will refer to the entities collectively as "appellants."  On December 27, 2011, appellants moved to seal and/or redact certain business information that will be presented during the course of this appeal.  Specifically, appellants request that the following information be shielded from public inspection:

> [T]he following information for each tenant space in each Property: property address; date of lease; initial term of lease; number of renewal term(s), if any; length of renewal term(s), if any; effective date of modified rent terms, if any; base rent payable during initial term, if any; base rent payable during renewal term(s), if any; base rent payable under modified rent terms, if any; date the rental space became vacant; actual base rent paid; actual percentage rent paid, if any; tenant's payment to landlord on account of operating expenses; total operating expenses incurred . . . the underlying financial documentation supporting the figures [above] . . . summaries of the substantive provisions of each lease and the parts of the lease that identify its date, initial term, number and length of renewal terms, effective date of modified rent terms, and rent payable during the initial and renewal terms, and modifications thereof . . . Complete Profit and Loss Statements for each Appellant . . . the following information for each tenant space in each Property: base rent; percentage rent; rent paid; common-area maintenance ("CAM") income paid; total paid; adjusted operating expenses; and net income.

Appellants' Mot. To Seal and/or Redact Confidential Documents and Information at 2-3.[1] For the reasons stated below, appellants' motion is denied.

The proper framework for determining whether to restrict the public's access to judicial records is Vermont's Rules for Public Access to Court Records (Rules). *In re Sealed Documents*, 172 Vt. 152, 156 n.3 (2003); see also Rules for Public Access to Court Records § 1 ("[The rules] provide a comprehensive policy on public access to Judicial Branch records."). The general policy in Vermont with respect to public access to court records is that such records "shall be open to any member of the public for inspection or to obtain copies." Rules § 4. However, the Rules enumerate specific exceptions to public access, *Id.* § 6(b), and also provide a catch-all exception under which a court may seal an otherwise public record for "good cause specific to the case before the judge and exceptional circumstances." *Id.* § 7(a).

There is no suggestion in this case that the information appellants seek to protect fits any of the enumerated exceptions in Rule 6. Therefore, if the court is to seal or redact any information appellants present in this case, its authority must come from Rule 7. Appellants argue that the information listed above qualifies as "trade secrets," and that preventing disclosure of such secrets to the public meets the good cause and exceptional circumstances standard under Rule 7. Specifically, appellants argue that disclosure of the above information would result in financial harm, because competitors could use the information to undercut appellants' rates, and to draw more business to themselves.[2]

---

[1] The list of information appellants seek to protect from public disclosure is the same list that appeared in a stipulated protective order issued by this court on March 24, 2011. The fact that a protective order was issued in this case has little bearing on whether this motion should be granted under the Vermont Rules for Access to Court Records. Protective orders are issued liberally to aid in the discovery process, and allow all parties to obtain full and fair discovery. While protective orders are issued liberally to encourage full disclosure among parties, very different standards apply to information presented in court proceedings.

[2] The court is skeptical that information regarding rental rates of commercial property can truly qualify as a "trade secret" under Vermont law. Although the language of 9 V.S.A. § 4601(3) is drafted fairly broadly, it seems inimical to Vermont's general policies of openness in business practices to allow such information to be protected from disclosure to the public. See, e.g., 9 V.S.A. 2453 *et seq* (Vermont's consumer fraud and antitrust statutes).

Vermont's law on trade secrets, 9 V.S.A. § 4601 *et seq.*, is designed to protect businesses from <u>involuntary</u> disclosure of confidential business information that could do financial harm if made public. This case involves no involuntary disclosure – appellants willingly seek to introduce the information for which protection is sought. It is worth noting that Vermont's public records statute, 1 V.S.A. § 315 *et seq.*, specifically exempts trade secrets from public disclosure, *id.* § 317(c)(9), but Vermont's Rules for Public Access to Court Records do not. The omission of a trade secrets exemption from the Rules suggests that Vermont's policy with respect to public disclosure of trade secrets in the context of *judicial* records is generally one of openness, and should only be overcome in exceptional circumstances. Such circumstances do not exist in this case.[3]

First, appellants have chosen to take an appeal to this court, and voluntarily seek to introduce the evidence for which protection is sought. Appellants' brief cites two related federal cases in which a Vermont auto group sued the state over its greenhouse gas emissions policies: *Green Mountain Chrysler Dodge Jeep v. Crombie*, 2:05-CV-302, 2007 WL 922255 (D. Vt. Mar. 23, 2007) ("*Crombie I*") and *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 205-CV-302, 2007 WL 1074933 (D. Vt. Apr. 6. 2007) ("*Crombie II*"). In the *Crombie* cases, the plaintiffs sought to seal or redact information involving "future product plans, vehicle design information including fuel economy effects, cost and pricing estimates, market data, financial projections and experts' proprietary data analysis software, and profit and loss information." *Crombie I* at *2. In *Crombie I*, the court reasoned that it would only seal the requested information for the "most compelling reasons", *id.* at *7, and set the case for a status conference.

In a subsequent decision during the same litigation, the court held that the plaintiffs could "identify specific companies, product lines and the like by a generic description or code." *Crombie II* at *1 Additionally, the court ruled that "numerical data may be replaced by sample numbers or

---

[3] Appellants' brief cites *Springfield Terminal v. Agency of Transportation et al.*, 174 Vt. 341 (2002), a case decided under the public records act, not the Rules. Because *Springfield Terminal* is not a Rules case, it is not applicable here.

summaries." *Id.* Notably, however, the court also held that "[a]bsent exceptional circumstances, all evidence deemed relevant to the adjudication of the validity of Vermont's greenhouse gas regulations shall be presented in open court, with full and unrestricted public access." *Id.* The information appellants seek to protect is certainly relevant to deciding the tax appeal – indeed, it will likely be essential to deciding the appeal. Under the logic of *Crombie II*, therefore, it must be "presented in open court, with full and unrestricted public access." *Id.*

Second, this court must issue a decision on the underlying tax appeal, and explain its reasons for deciding the way it does. To issue a decision as appellants propose – that refers to "Confidential Documents" or "Confidential Information" as the basis for the court's reasoning – would be to ignore the public's clear strong interest in information relating to tax appeals and similar proceedings. Indeed, the *Crombie I* court expressed many of the same concerns:

> The Court is troubled by the implication that the Plaintiffs may introduce evidence on this point that they do not want the public to see. Presumably they wish the Court to rely on this evidence in its findings and conclusions; does the Court refer to sealed documents or secret testimony in its opinion? Does it seal its opinion if based upon trade secrets submitted under seal?"

*Crombie I* at *7.

Finally, the information appellants seek to protect is dramatically different from proprietary information that is typically shielded from public disclosure in a court proceeding. Information about companies' upcoming product lines is much more in keeping with the traditional definition of a trade secret, and is much more vulnerable to exploitation by competitors than the information appellants seek to seal here.

<u>ORDER</u>

For the foregoing reasons, Appellants' Motion to Seal and/or Redact Confidential Documents and Information (MPR #4), filed December 27, 2011, is ***denied***, as to any and all such information offered or admitted into evidence at the upcoming trial.

Dated at Bennington, this      day of January, 2012.

_____
Katherine A. Hayes
Superior Court Judge